**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

Shenelle Lovato,
Alexis Suarez,

 Plaintiffs,

 v.

WILLIAMS MAHLER in his individual capacity,
COMMUNITY CORRECTIONS INC,
MARK WESTER in his individual capacity,
KIRSTEN MARTINEZ in her individual capacity,
HILLARY JOHNSON in her individual capacity,
ANTONETE JARAMILLO in her individual capacity
BOBBI VIGIL in her individual capacity,

Defendants.


## AMENDED COMPLAINT FOR CIVIL RIGHTS
## AND TORT VIOLATIONS


Plaintiffs, Shenelle Lovato and Alexis Suarez through their attorneys, Barker and

Tolini P.C., hereby and respectfully brings this Complaint for violation of their civil rights under

42 U.S.C. § 1983 and for tort violations.  They allege the following:

### JURISDICTION AND VENUE

1.      This is an action for damages and other relief against Community Corrections

staff member who sexually assaulted Shenelle Lovato and Alexis Suarez and the Corporation

and its managers whose actions and inactions led to the assaults.  Jurisdiction is invoked under

Title 42 U.S.C. §§ 1983 and 1988, and the Eighth Amendment and Due Process Clause of  the

Constitution of the United States.

2.     This Court has supplemental jurisdiction to consider state causes of action under 28 U.S.C.A. §1367, when the ancillary state claims õform part of the same case or controversyö as other counts for which this Court has established jurisdiction.

3.      Venue properly lies in the District of Colorado pursuant to 28 U.S.C. §1391(b).

## PARTIES

4.     At the time of the allegations contained herein, Plaintiff Shanell Lovatto was a postconviction prisoner at Community Corrections Inc. (ComCor) in Colorado Springs, Colorado and, as such, she was entitled to the protections of the Eighth and/or Fourth and Fourteenth Amendments to the United States Constitution.

5.     At the time of the allegations contained herein, Plaintiff Alexis Suarez was a postconviction prisoner at ComCor in Colorado Springs, Colorado and, as such, she was entitled to the protections of the Eighth and/or Fourth and Fourteenth Amendments to the United States Constitution.

6.     During all times relevant to this Complaint, Defendant Community Corrections Inc.(COMCOR) operated and maintained ComCor pursuant to a contract with the State of Colorado and was bound by contract to comply with certain policies of the Colorado Department of Corrections ("CDOC").    COMCOR is a private run half-way house located in El Paso County, Colorado.   COMCOR houses Colorado Department of Corrections inmates who are transitioning from prison to parole and inmates who were directly sentenced there. <u>COMCOR is a ÷correctional institutionø pursuant to Colorado statute.</u>

7.     During portions of the allegations against him, the Corporation employed Defendant William Mahler as a corrections supervisor at COMCOR.   Mr. Mahler had direct supervisory and disciplinary authority over Ms. Lovato and Ms. Suarez.  Mr. Mahler's authority over Ms. Lovato and Ms. Suarez was delegated to him by the State of Colorado pursuant to statute.

8.     At all times relevant to this Complaint, Defendant Mark Wester was serving as the Chief Executive Officer of the Corporation and was responsible for the implementation of all COMCOR customs, practices and policies regarding the prevention of sexual assaults.   As the Chief Executive Officer of COMCOR, Mr. Wester was aware of his duty to protect female inmates from being sexually assaulted.

9.     Defendant Kirsten Martinez was a Security Specialist at COMCOR.   Ms. Martinez's duties included supervising inmates, and supervising employees to ensure compliance with PREA(Prison Rape Elimination Act).

10.     Defendant Antonette Jaramillo was the Director of Human Resources at COMCOR.  As Director of Human Resources one of Ms. Jaramillo's duties was to develop a culture that protected the women inmates from sexual assaults by the staff and encourage compliance with PREA.

11.     Defendant Hillary Johnson was the Director of Quality Assurance for COMCOR. Ms. Johnson oversaw operations of the residential program of both the security and case management side.  Ms. Johnson was the PREA Coordinator for COMCOR.  As the PREA Coordinator, Ms. Johnson was specifically tasked with protecting the female inmates from being sexually assaulted by male staff members.

12.     Defendant Bobbi Vigil was the Director of Operations for COMCOR.  Ms. Vigil was in charge of all personal at COMCOR.  Ms. Vigil was tasked with making sure all staff and COMCOR were aware of PREA requirements and fostering and environment were staff felt comfortable reporting fellow staff members for violations.

13.     Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil were at all material times residents of Colorado, employees of COMCOR, supervisors of Mr. Mahler and entrusted with the care and protection of both Shenelle Lovato and Alexis Suarez.

14.     Defendants Community Corrections Inc., William Mahler, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil were at all times material acting under the color of state law.

## FACTUAL ALLEGATIONS

15.     In June of 2019, COMCOR employed William Mahler as a shift supervisor.  Mr. Mahler worked directly with the inmates at COMCOR.  Mr. Mahler delegated work duties to the inmates.  As a shift supervisor, he had authority to award merits that would allow for additional privileges and to issue demerits which would cause a loss of privileges or even a revocation to the Department of Corrections.

16.     At the time of his hiring, COMCOR failed to conduct an adequate investigation into Mr. Mahler's history, military background, employment background (including working as a male stripper), social media presence or qualifications.  COMCOR failed to perform any type of psychological testing or screening procedures.  The primary people responsible for this failure were Bobbi Vigil and Antonette Jaramillo.

17.     From the time of hiring, until Mr. Mahler's termination for raping Ms. Lovato and Ms. Suarez; COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil, failed to train Mr. Mahler regarding the safety of inmates, proper boundaries between staff and inmates, inmates right to be free from sexual assaults and harassment.  Mark Wester was the Director of COMCOR.  Mr. Wester was responsible for all of the safety issues at COMCOR.  As Director of Operations Bobbi Vigil was responsible to insure Mr. Mahler had proper training regarding sex assault preventions of inmates.

18.     Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil failed to implement any of the educational requirements of the Federal Prison Rape Elimination Act.  ~~As Director of COMCOR Mr. Wester was the person responsible for the implementation of the PREA.~~  Hillary Johnson was specifically tasked with implementing PREA requirements.  Ms. Johnson had been on notice since the 2017 PREA Audit that COMCOR was having difficulty complying with PREA requirements.  Specifically, the high staff turn over had created an environment where staff would turn a blind eye to violations of PREA and inmates felt intimated to bring forth accusations.  Ms. Johnson was aware of these problems but was deliberately indifferent to the apparent risk of sexual assault against female inmates.

19.     COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil failed to supervise Mr. Mahler in any reasonable manner.  Mr. Mahler routinely violated PREA guidelines by interacting one on one with female inmates, entering into female inmates' cells unaccompanied by any other staff, and making graphic sexual comments to female inmates.  Mr. Mahler used his authority as a COMCOR supervisor to lure Ms. Lovato and Ms. Suarez to isolated areas in COMCOR that were outside of video surveillance. Specifically, Mr.

Mahler used a supply closet, the case manager's office, and room 18 to commit his sexual assaults.  COMCOR had been previously put on notice by PREA audits that those areas posed concern and policies needed to be implemented to prevent sexual assaults.  COMCOR failed to put any supervisory policies in effect in regard to those areas.  ~~Further the inadequacies in the video surveillance was compounded by the fact COMCOR failed to put any meaningful monitoring of the surveillance.~~  Not only was the video surveillance inadequate, the surveillance that was in place often was not even monitored. This fact the video surveillance was not monitored well known throughout the facility and relied upon by Mr. Mahler to commit the brazen sexual assaults.  Both Hillary Johnson and Kristen Martinez were aware of the lack of proper monitoring and the risk it created to the female inmates.

20.     ~~COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil failed to implement or enforce any PREA safety guidelines or common sense preventions to sexual assaults.~~ Hillary Johnson failed to implement or enforce any PREA safety guidelines or common-sense preventions to sexual assaults even though this was specifically tasked to her.

21.     COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil intentionally fostered an environment where inmates were afraid to report violations, abuse, or assaults by staff on inmates.  .~~ Prior to their assaults, both Ms. Lovato and Ms. Suarez had been told that complaints against staff would lead to inmates being returned to the Department of Corrections.  COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil required Ms. Lovato and Ms. Suarez to sign an Acknowledgement which stated any sexual contact between and offender and staff, regardless of whether it was consensual, may result in disciplinary action against the inmate.~~  Hillary Johnson

was aware the in 2016, the Colorado Springs Police Department had informed COMCOR or their belief that COMCOR inmates were intimidated from bringing forth sex assault violations. Part of the reason for this reluctance is that COMCOR had a history of mishandling sex assault evidence.

22.     Prior to their assaults, both Ms. Lovato and Ms. Suarez had been told that complaints against staff would lead to inmates being returned to the Department of Corrections. COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil required Ms. Lovato and Ms. Suarez to sign an Acknowledgement which stated any sexual contact between and offender and staff, regardless of whether it was consensual, may result in disciplinary action against the inmate.

23.     Mr. Mahler was an agent of COMCOR.  Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil empowered Mr. Mahler with unfettered access to all inmates.  Mr. Mahler had the ability to assign inmates work details. He was able to assign inmates merits that would entitle them to extra privileges and passes to leave the facility.  He was also empowered to issue demerits that could result in an inmate being sent to the Department of Corrections.   Mr. Mahler had no qualifications to issue the merits/demerits.  Mr. Mahler was given no training regarding the issuing of the merits/demerits. Mr. Mahler was given this power directly from the job description manual drafted by COMCOR and Mr. Wester and Bobbi Vigil.

24.     Mr. Mahler used the powers given to him by COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil, to isolate, humiliate, groom and sexually assault Shenelle Lovato and Alexis Suarez.

Shennelle Lovato

25.     Ms. Lovato arrived as an inmate at COMCOR on May 15, 2019.

26.     Ms. Lovato was supervised in part by Mr. Mahler.  Mr. Mahler controlled her living and work situation.  Mr. Mahler almost immediately began using his powers bestowed upon him by COMCOR to begin grooming Ms. Lovato for victimization.  Mr. Mahler would begin with inappropriate comments to Ms. Lovato and then he either deducted or awarded points based on her response to these comments.

27.     On August 31, 2019, Mr. Mahler directed Ms. Lovato to the basement of the 3950 N. Nevada Facility.  It was well known at COMCOR that several areas of the basement were outside of the cameras.  One of the areas outside the camera was the storage closet.  Mr. Mahler raped Ms. Lovato in the storage closet.

28.     Mr. Mahler's actions constituted prison rape, as that term is defined by 42 U.S.C. § 15609(8), (9) and (11).   Mr. Mahler's actions constituted unlawful sexual assault under Colorado law C.R.S. 18-3-404(1)(f).

29.     Ms. Lovato was initially afraid to report the rape because of Mr. Mahler's position of authority and because of the environment ~~Mr. Wester~~ Bobbi Vigil and Hillary Johnson created at COMCOR which discouraged inmates from reporting violations.  Ms. Lovato believed if she reported the incident she would be sent back to prison.  This was based partially on the Acknowledgement she was forced to sign by ~~Mr. Wester~~  COMCOR and Bobbi Vigil.

30.     Following the rapes, Ms. Lovato begun to suffer from severe depression and anxiety.  The rape committed against her by Mr. Mahler caused her to suffer from PTSD.  Ms. Lovato's mental anguish was exacerbated by the fact she felt helpless against her attacker because of the position of power COMCOR had bestowed upon Mr. Mahler.  Ms. Lovato also felt helpless because of the environment Mr. Wester and COMCOR had created.

31.    Approximately one month after she was raped by their agent, COMCO and Mark Wester regressed Ms. Lovato to the Department of Corrections.  Upon information and belief, Ms. Lovato's regression was done as retaliation for reporting the rapes to law enforcement.

32.    On November 11, 2021, Judge Miles found probable cause that William Mahler raped Shanelle Lovato and issued a warrant for his arrest.  Specifically, Judge Miles found William Mahler had supervisory authority of Ms. Lovato and used that authority to cause her to submit to sexual penetration.  Judge Miles also found that these acts occurred at a "correctional institution" as defined by state law.

Alexis Suarez

33.    Ms. Suarez arrived as an inmate at COMCOR in July of 2019.

34.    Between July and September of 2019, Mr. Mahler would consistently enter Ms. Suarez's cell uninvited and make inappropriate sexual comments, including his prowess as a male stripper.

35.    In August of 2019, Mr. Mahler used his supervisory authority to summon Ms. Suarez to the offices.  This was done after hours when it was well known no one would be monitoring the surveillance cameras.    While she was cleaning one of the offices at COMCOR, Mr. Mahler walked behind Ms. Suarez, grabbed her vagina from behind and digitally penetrated her.  Again, this was an area not covered by video surveillance.  Ms. Suarez submitted to Mr. Mahler's will because he had supervisory authority and she was worried if she did not she would be send to prison.

36.    Ms. Suarez was afraid to report to this sexual assault because of Mr. Mahler's position of authority and because of the environment Bobbi Vigil and Hillary Johnson created at COMCOR that discouraged inmates from reporting violations.  Ms. Suarez believed if she

reported the incident she would be sent back to prison. This was based partially on the Acknowledgement she was forced to sign by <u>COMCOR</u>.

37.     A week or so later, Mr. Mahler escorted Ms. Suarez to the storage closet in the basement of 3950. Mr. Mahler told Ms. Suarez he was taking her there because there were no cameras. Once Mr. Mahler got Ms. Suarez in the storage closet, he spun her around and raped her from behind. <u>It was common knowledge amongst inmates and staff that Mr. Mahler was raping Ms. Suarez. Specifically, Kristen Martinez was aware of the rumors of the sex assault against Ms. Suarez, but she was deliberately indifferent to the danger</u>.

38.     On another occasion Mr. Mahler again escorted Ms. Suarez to the supply closet. He attempted to have vaginal intercourse with Ms. Suarez but she told him she was on her period. Mr. Mahler then forced her head to his genitals and forced her to perform oral sex upon him.

39.     On September 13, 2019 Mr. Mahler instructed Ms. Suarez to clean room 18 at the 3950 building. This room is also not covered by the video surveillance system. Once Ms. Suarez was in the room, Mr. Mahler again forced himself upon her and <u>forcefully penetrated her vagina with his penis</u>.

40.     Mr. Mahler's actions constituted prison rape, as that term is defined by 42 U.S.C. § 15609(8), (9) and (10).   Mr. Mahler's actions constituted Sexual Assault under Colorado law C.R.S. 18-3-402(1)(a)(f).

41.     Rather than treat Ms. Suarez as a victim, COMCOR isolated her for her outcry and eventually violated her for alleged technical violations. COMCOR has a history of arbitrary and capricious regressions, which were documented in the Department of Public Safety's audit in January of 2017. It is Ms. Suarez's position that she was violated for her outcry.

42.     On November 11, 2021, Judge Miles found probable cause that William Mahler raped Alexis Suarez multiple times and issued a warrant for his arrest.  Specifically, Judge Miles found William Mahler had supervisory authority of Ms. Suarez and used that authority to cause her to submit to sexual penetration.  Judge Miles also found that these acts occurred at a "correctional institution" as defined by state law.

43.     Ms. Suarez suffered extreme mental anguish, depression, nightmares and thoughts of suicide.  The mental trauma Ms. Suarez continues to suffer is exacerbated by her feeling of helplessness she had due to the environment fostered at COMCOR.  The trauma Ms. Suarez suffered caused her to relapse into drug addiction.

## COUNT I

**42 U.S.C. SEC 1983 CLAIM AGAINST DEFENDANT MAHLER**

**Eight Amendment-Cruel and Unusual Punishment/Excessive Force**

44.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

45.     At the time that Defendant Mahler sexually assaulted Ms. Lovato at COMCOR, she was a post-conviction prisoner, and, as such, enjoyed the right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  This included a right to be secure in her bodily integrity and free from sexual misconduct, including sexual advances, and sexual penetration by her jailors.  Mr. Mahler used the authority granted to him by Bobbi Vigil and COMCOR to cause Ms. Lovato to submit against her will.

46.     At the time that Defendant Mahler sexually assaulted Ms. Suarez at COMCOR, she was a post-conviction prisoner, and, as such, enjoyed the right to be free from cruel and

unusual punishment under the Eighth Amendment to the United States Constitution.   This included a right to be secure in her bodily integrity and free from sexual misconduct, including sexual advances, and sexual penetration by her jailors. Ms. Suarez did not consent to the sexual misconduct described above, and could not have so consented because she was a prisoner at COMCOR.   Mr. Mahler used the authority granted by him to cause Ms. Suarez to submit against her will.

47.   The State of Colorado had delegated its sovereign power to punish, supervise and rehabilitate felon inmates to COMCOR.   COMCOR delegated this power to Mr. Mahler.   Mr. Mahler was given governmental authority over Ms. Suarez and Ms. Lovato.   If either of them refused to comply with Mr. Mahler's requests, he could send them back to prison.   On the reverse, as long as they complied with his demands for sex, they would be reward up to and including early release from their sentence imposed by the State of Colorado.   Judge Miles found that William Mahler used this authority to rape Ms. Lovato and Ms. Suarez.

48.   Defendant Mahler violated Ms. Lovato's Eighth Amendment right to be secure in her bodily integrity and free from sexual misconduct by prison personnel when he raped her at COMCOR.

49.   Defendant Mahler violated Ms. Suarez's Eighth Amendment right to be secure in her bodily integrity and free from sexual misconduct by prison personnel when he raped her at COMCOR.

51.   Defendant Mahler's sexual misconduct, described above, was intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiffs' constitutional rights.

52.   Defendant Mahler's sexual misconduct, described above, constituted a physical

injury to Plaintiffs.

53.    Defendant Mahler's sexual misconduct caused Plaintiffsø damages and injuries, including physical injury, invasion of bodily integrity and emotional distress.

WHEREFORE, Plaintiffs Shenelle Lovato and Alexis Suarez requests compensatory and punitive damages against Defendant Mahler, together with all costs and attorney fees.

## <u>COUNT II</u>

### 42 U.S.C. SEC 1983 CLAIM

### Eighth Amendment-Cruel and Unusual Punishment-Failure to Protect

(COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil)

54.    Plaintiffs incorporate the above-enumerated paragraphs as though fully set forth herein.

55.    At all times relevant to this Complaint, the Eighth and Fourteenth Amendments prevented Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil from exposing Plaintiffs to unreasonable risks of harm or from exercising deliberate indifference toward her safety, security, and constitutional rights.

56.    At all times relevant to this Complaint, the Eighth and Fourteenth Amendments imposed on Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil had a duty to protect the plaintiffs from sexual assaults. COMCOR, Mr. Wester, and <u>Hillary Johnson</u> failed to protect the plaintiffs from the sexual assaults perpetrated by their agent William Mahler. <u>As the person in charge of implementing PREA, Hillary Johnson was specifically tasked this duty.</u>

57.     Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil were aware of the dangers of sexual assaults by male staff members against female inmates.  Despite this knowledge, Defendants COMCOR, Mark Wester, ~~Kirsten Martinez, Antonette Jaramillo~~, Hillary Johnson, and Bobbi Vigil improperly and inadequately trained and supervised employees at COMCOR.  Defendants COMCOR, Mark Wester, ~~Kirsten Martinez, Antonette Jaramillo~~, Hillary Johnson, and Bobbi Vigil improperly and inadequately trained and supervised Joseph Mahler.

58.     Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil engaged in a custom of suppressing, denying, or disregarding incidents of sexual misconduct.     Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil created an environment that put all the female inmates at COMCOR at risk for sexual assaults.  Upon information and belief Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil cut corners relating to inmate safety.  These actions put the female inmates at risk.  These actions included, but were not limited to, the following practices:

        É    ~~Mark Wester~~ Antonette Jaramillo, Bobbi Vigil, and Hillary Johnson fostered an environment that discouraged inmates from reporting violations. Defendants COMCOR, ~~Mark Wester, Kirsten Martinez~~, Antonette Jaramillo, Bobbi Vigil and Hillary Johnson required Ms. Lovato and Ms. Suarez to sign an Acknowledgement which stated any sexual contact between and offender and staff, regardless of whether it was consensual, may result in disciplinary action.  Defendants COMCOR and Hillary Johnson were aware that the Colorado Springs Police Department believed inmates were afraid to report sex assaults from at least 2016, yet failed to take any action to correct the problem.

Antonette Jaramillo was aware the constant turnover amongst COMCOR staff was preventing the PREA Act from being properly implemented, yet she did nothing to correct the problem.

É      Defendants COMCOR, Mark Wester, Kristen Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil failed to conduct adequate internal investigations of rape allegations.  Kristen Martinez was aware of the rumors Mr. Mahler was raping inmates, yet she chose not to investigate the accusations; and

É      Defendants COMCOR,Mark ~~Wester, Kirsten Martinez, Antonette Jaramillo~~  Hillary Johnson, and Bobbi Vigil failed to advise inmates of their rights pursuant to the PREA.  Hillary Johnson was specifically tasked with ensuring compliance with PREA but failed to make sure inmates understood their rights.  Since past audits had made Ms. Johnson aware of these failings her failure to act amounted to deliberate indifference.

É      Defendants COMCOR, ~~Wester, Kirsten Martinez, Antonette Jaramillo~~ Hillary Johnson, and Bobbi Vigil failed to train faculty pursuant to PREA guidelines. Specifically, Hillary Johnson failed to train staff their duty to report violations of other staff, to monitor other staff for compliance, and to understand the dangers of sex assault female inmates were in.  Bobbi Vigil helped facilitate and environment that turned a blind eye to staff taking advantage of inmates;

É      Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil failed to perform any risk assessment for inmates.  Specifically, Hillary Johnson was on notice from prior evaluations the danger

unmonitored areas posed to inmates being sexually assaulted, yet she was deliberately indifferent to these risks;

É      COMCOR was put on notice by the Department of Public Safety's 2017 Audit that COMCOR was inadequately monitoring the facility in regards to the prevention of sexual assaults. The audit pointed out that COMCOR had poor grounds surveillance, arbitrary disciplinary procedures, high staff turnover, and complete lack of staff training in regard to rape prevention.   Defendants COMCOR, Mark Wester,  Hillary Johnson, and Bobbi Vigil failed to correct any of the problems pointed out by the audit. Hillary Johnson was specifically tasked with these issues and was deliberately indifferent. These failures contributed to an environment that was ripe to be taken advantage of by a sexual predator.

É      Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil failed to safeguard inmates who might be high risk for sexual assault.   Bobbi Vigil and Hillary Johnson were aware the prior trauma Ms. Lovato and Ms. Suarez had suffered would make them specifically vulnerable to a sexual predator and yet they were deliberately indifferent to this risk;

É      ~~Mark Wester~~ Hillary Johnson failed to implant physical plant/monitoring strategies to prevent sex assaults by staff against inmates; Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil were all aware of the ÷blind spotsø at the COMCOR facility yet failed to take any meaningful steps to correct them.  The previous PREA audits had inform Hillary Johnson and Bobbi Vigil that blind spots were a risk to sexual assaults by staff against inmates.  COMCOR,

<u>Hillary Johnson, and Bobbi Vigil were deliberately indifferent to this risk.  Further, Hillary Johnson and Bobbi Vigil were aware William Mahler knew of the blind spots before the sex assaults took place</u>

É      Defendants COMCOR, ~~Wester, Kirsten Martinez, Antonette Jaramillo~~ <u>Hillary Johnson, and Bobbi Vigil</u> failed to train faculty on the recognition and prevention of sex assaults by other faculty on inmates; this was pointed out two years prior to the rapes in the audit.  The video surveillance systems that were in place were not regularly monitored.  In the rare time the surveillance system was monitored, the monitors lacked training to prevent staff from sexually assaulting inmates.  Mr. Mahler bragged to Ms. Suarez that the poorly trained staff would never catch him.  <u>Both individual Defendants Hillary Johnson and Bobbi Vigil were aware of the issue and failed to act.  Defendant Kristen Martinez was aware of the rumors William Mahler was using the blind spots to rape inmates.  Bobbi Vigil was also aware staff would turn a blind eye to other staff's violations of rules.</u>

É      Defendants COMCOR, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil failed to adequately staff the female wards in order to prevent sex assaults.  <u>As director of Human Resources this was directly attributable to Antonette Jaramillo.  Ms. Jaramillo was aware the danger of male staff supervising female inmates but was deliberately indifferent to the risk.  This deliberate indifference led to Mr. Mahler having the supervisory authority he used to rape Ms. Lovato and Ms. Suarez;</u>

É      <u>Defendants COMCOR,</u> ~~Wester, Kirsten Martinez, Antonette Jaramillo~~ <u>Hillary Johnson, and Bobbi Vigil</u> failed to protect inmates from retaliation for reporting

sexual harassment and sexual abuse.  Again, <u>Hillary Johnson and Bobbi Vigil were aware</u> <u>inmates were afraid to report sexual assaults but they were deliberately indifferent to the</u> <u>risk it created</u>.  In fact, Ms. Suarez believes she was terminated because of her report.

59.    The customs and practices described above constituted deliberate indifference to the safety, security, and rights of Plaintiffs and other prisoners at COMCOR, and exposed Plaintiffs and other prisoners to unreasonable risks of harm of sexual assault.

60.    The Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil wrongful acts and failures to act proximately caused Plaintiffsø damages, including physical injury, invasion of bodily integrity, and severe psychological and emotional distress, including injuries and distress.  But for the environment created by the above Defendantsø William Mahler would never have been able to rape Shanelle Lovato and Alexis Suarez.

WHEREFORE, Plaintiffs Shanelle Lovato and Alexis Suarez asks for compensatory and punitive damages against Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil together with an award of reasonable attorneysø fees and costs.

## *COUNT III*

### **INTENTIONAL TORT (BATTERY-SEXUAL ASSAULT)**

61.    Plaintiffs incorporates the above paragraphs as though fully set forth herein.

62.    At the time that Defendant Mahler sexually penetrated Plaintiff Lovato and sexually penetrated Plaintiff Suarez at COMCOR, both Plaintiffs lacked the capacity to consent. Further, Plaintiffs did not consent to the sexual fondling or penetration.

63.     Defendant Mahler's sexual fondling and sexual penetration of Plaintiffs, as described above, constituted battery/sexual assault.

64.     Defendant Mahler's battery/sexual assault of Plaintiffs proximately caused Plaintiffsø damages and injuries, including physical injury, invasion of bodily integrity, and severe psychological and emotional distress.

65.     At the time of the COMCOR sexual misconduct, Plaintiffs were directly informed and/or had reason to believe that Defendant Mahler was an agent and employee of the Corporation. It was the agency relationship that allowed Defendant Mahler to commit the rapes of Plaintiff Lovato and Suarez.  <u>Further, Judge Miles found that it was the supervisory authority given to William Mahler that allowed him to rape Ms. Lovato and Ms. Suarez.  This authority was given to him by COMCOR, Make Wester, Hillary Johnson and Bobbi Vigil.  Without this power he would never have been able to rape Ms. Lovato and Ms. Suarez.</u>

66.     Due to the existence and nature of the agency relationship between Defendant Mahler and Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil at the time of the sexual misconduct, Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil are legally liable for his tortious conduct.

## <u>COUNT IV</u>

**42 U.S.C. sec. 1983 Fourteenth Amendment- Substantive Due Process-Invasion of Bodily Integrity**

67.     Plaintiffs hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

68.     By sexually assaulting Ms. Lovato and Ms. Suarez, William Mahler violated their right to be secure in their bodily integrity, a liberty interest protected by the Due Process Clause of the Fourteenth Amendment.  Mr. Mahler used his power as a state actor to violate Ms. Suarez and Ms. Lovatos bodily integrity as found by Judge Miles.

69.     Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil recklessly, with conscious disregard to the serious and obvious risk to the safety of inmates like Ms. Lovato and Ms. Suarez, violated their rights to be secure in their bodily integrity by allowing pervasive sexual abuse by staff members against inmatesøins the following ways.

a.     By COMCOR, Antonette Jaramillo and Bobbi Vigil employing William Mahler in a position that allowed him unsupervised access to female inmates, with, in spite of the knowledge that Mr. Mahler posed a substantial risk of serious harm.

b.     By Hillary Johnston failing to take effective remedial action to address the known, ongoing, pervasive problem of sexual abuse by prison personal against inmates, Ms. Johnston was aware from at least 2016 of the dangers of sex assault at COMCOR but failed to act.  Ms. Johnston was aware the lack of surveillance posed a risk female inmates;

c.     By COMCOR, Hillary Johnson, and Bobbi Vigil failing to properly supervise its employees, including William Mahler.  COMCOR and its staff had been put on notice by the 2017 Department of Public Safety Audit that the on grounds surveillance system was inadequate.  Besides numerous blind spots, including those where the rapes occurred, the video surveillance system was not monitored.  The lack of monitoring

allowed Mr. Mahler to asport his victims to secluded areas to sexually violate them.  Mr. Mahler used the known blind spots to facilitate his crimes

  d. By failing to train its employees to prevent or address sexual assaults by staff members on inmates.  Kristen Martinez was aware of the rumors of sex assaults but failed to investigate.  This was due to the environment created by COMCOR, Hillary Johnson, and Bobbi Vigil.  Further numerous other staff members were aware of the rapes but failed to act because of the environment at COMCOR.

  e. By creating an environment where inmates were afraid to come forth with complaints of sexual assault.  The 2017 Audit noted that discipline of inmates at COMCOR was arbitrary and capricious at best.  The fact that both Ms. Lovato and Suarez were subsequently terminated for minor technical violations exemplify the perception that complaints by inmates would be retaliated against.  If inmates were not so afraid to report violations, William Mahler would not have been so empowered to commit these rapes.

70. Defendants COMCOR, ~~Wester, Kirsten Martinez, Antonette Jaramillo~~ Hillary Johnson, and Bobbi Vigil failed to properly and effectively train, supervise, and or/discipline their employees, including William Mahler, regarding sexual abuse of inmates.  This failure had been pointed out in the 2017 audit.  The cause in the audit was particularly the high turnover in staff.  This resulted in an unconstitutional invasion of Ms. Lovato and Ms. Suarez's bodily integrity and a deliberate indifference to the substantial risk of serious harm to Ms. Lovato and Ms. Suarez.

71. Defendants COMCOR, ~~Wester, Kirsten Martinez, Antonette Jaramillo~~ Hillary Johnson, and Bobbi Vigil were aware that their acts or omissions were substantially certain to

cause COMCOR staff members to violate constitutional rights of inmates to be secure in their bodily integrity.  Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil consciously and deliberately chose to disregard this risk of harm failing to provide and/or in deliberately choosing not to provide additional effective training, supervision, and discipline of staff, particularly William Mahler, regarding sexual acts with inmates.

72.     In light of the duties and responsibilities of COMCOR, the need for training, supervision, and discipline regarding staff sexual acts with inmates was obvious.  The inadequacy of appropriate hiring, training, and/or supervision was clearly likely to result in the violation of constitutional rights, such as those described herein.  This was made clear to the defendants by the 2017 Audit and other information.   Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil's failure to appropriately train and/or supervise COMCOR staff like William Mahler constitutes deliberate indifference to the rights of inmates like Ms. Lovato and Ms. Suarez to be secure in their bodily integrity.  If staff had been properly trained, Mr. Mahler would have been reported for his initial violations of entering Ms. Lovato's room or making inappropriate comments.  But since the culture demanded staff turn a blind eye, Mr. Mahler was allowed to continue to groom Ms. Lovato and Ms. Suarez.

73.     Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil proximately caused the unconstitutional invasions of Ms. Lovato and Ms. Suarez's bodily integrity by failing to implement effective practices, and procedures that would have protected inmates from the substantial and known risk of serious harm posed by William Mahler and other staff from abusing their authority and influence to sexually assault inmates.

74.     Defendants COMCOR, ~~Wester, Kirsten Martinez, Antonette Jaramillo~~ Hillary Johnson, Bobbi Vigil set in motion a series of events that they knew would cause an inmate in a similar situation as Ms. Lovato or Suarez to be deprived of their constitutional rights to be secure in their bodily integrity.  But for the acts and omissions of Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil, Ms. Lovato and Ms. Suarez would not have been subjected to a violation of their constitutional rights and such a deprivation was a natural and foreseeable consequence of the acts and omissions.

75.     The lack of polices and actions to prevent sexual assault violated Ms. Lovato and Suarez's substantive due process rights to bodily integrity under the Fourteenth Amendment to the United States Constitution.

76.     Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil, and William Mahler's actions and inactions were taken in a reckless and callous indifference to the federally protected rights of Ms. Lovato and Suarez.

77.     When viewed in total, this conduct is outrageous and shocks the conscience. Among other things, the failure to heed the warnings of the Department of Public Safety's 2017 Audit is the direct cause of the sex assaults against the Plaintiffs.

78.     The acts and omissions of Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil, and William Mahler were direct, legal, and proximate cause of Ms. Lovato and Suarez's damages and physical pain that they suffered by the physical intrusion into their bodily integrity.  Both women continue to suffer humiliation, emotional pain and anguish. Both women continue to suffer mental and emotional pain and anguish to this day and will likely for the rest of their lives.  Defendants COMCOR,

Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, Bobbi Vigil, and William Mahler are the causes of theses damages.

## COUNT V

### Negligent Supervision

79.     Plaintiffs incorporate the above-enumerated paragraphs as though fully set forth herein.

80.     At all times relevant to this Complaint Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil had a duty to protect the plaintiffs from sexual assaults.  COMCOR and Mr. Wester failed to protect the plaintiffs from the sexual assaults perpetrated by their agent William Mahler.

81.     Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil were aware of the dangers of sexual assaults by male staff members against female inmates.

82.     The 2017 Department of Public Safety Audit put Defendants COMCOR, ~~Wester, Kirsten Martinez, Antonette Jaramillo~~ Hillary Johnson, and Bobbi Vigil on notice that they were negligent in the supervision necessary to prevent sexual assaults by their employees.  Kristen Martinez was aware of rumors of the rapes but chose not to act even though as a Security Specialist her job was to protect the inmates.  Hillary Johnson was aware of the risks the unmonitored area posed.  Bobbi Vigil was aware of the dangerous environment that had been present at COMCOR for years.  Both Hillary Johnson and Bobbi Vigil were aware of COMCOR's previous failings in investigation sex assaults and failed to try to remedy the problem.

83.     Despite such warning Defendants COMCOR, ~~Wester, Kirsten Martinez,~~ ~~Antonette Jaramillo~~ Hillary Johnson, and Bobbi Vigil continued to improperly and inadequately train and supervise employees at COMCOR.  Defendants COMCOR, ~~Wester, Kirsten Martinez,~~ ~~Antonette Jaramillo~~ Hillary Johnson, and Bobbi Vigil improperly and inadequately trained and supervised William Mahler.  <u>If Mr. Mahler had been properly supervised he never would have had the opportunity to rape Ms. Lovato and Ms. Suarez</u>

84.     Plaintiffsø do hereby incorporate verbatim as set forth herein the factual allegations that support Count II Failure to Protect under the Eight Amendment as provide the factual allegations for the State Tort of Negligent Supervision.

The Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil wrongful acts and failures to act proximately caused Plaintiffsø damages, including physical injury, invasion of bodily integrity, and severe psychological and emotional distress, including injuries and distress.

WHEREFORE, Plaintiffs Shanelle Lovato and Alexis Suarez ask for compensatory and punitive damages against Defendants COMCOR, Mark Wester, Kirsten Martinez, Antonette Jaramillo, Hillary Johnson, and Bobbi Vigil, together with an award of reasonable attorneysø fees and costs.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendants, and grant:

(a)     Appropriate declaratory and other injunctive and/or equitable relief;

(b)     Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c)     All economic losses on all claims allowed by law;

(d)    Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e)    Attorney fees and the costs associated with this action;

(f)    Pre and post-judgment interest at the lawful rate; and

(g)    Any further relief that this court deems just and proper, and any other relief as allowed by law.

**Plaintiff herein demand a trial by jury on all issues so triable.**

Dated this December 22, 2021

Respectfully submitted,

**BARKER & TOLINI, P.C.**

By:_____ s/ Joshua Tolini

Joshua N. Tolini
720 South Tejon Street
Colorado Springs, CO 80903
719-227-0230
FAX: 719-227-0964